J-A29006-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: D.J.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.J.K. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 726 WDA 2019 |

Appeal from the Order Entered April 17, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CC 629 OF 2017

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: FILED MARCH 11, 2020

Appellant, D.J.K., appeals from the trial court's April 17, 2019 order denying his "Petition to Vacate and Expunge the Involuntary Civil Commitment and Petition for Restoration of Rights" ("Petition"), in which D.J.K. asked the court to expunge the records of his involuntary commitments under 50 P.S. § 7302 ("Section 302") and 50 P.S. § 7303 ("Section 303") of the Mental Health Procedures Act ("MHPA").[1] After careful review, we affirm.

On June 4, 2017, Appellant's spouse contacted police and emergency medical personnel because she was concerned about Appellant's intoxication. "Appellant had been drinking heavily for several days and had taken pain medication[,] as well." Appellant's Brief at 5. Appellant was transported to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 50 P.S. §§ 7101-7503.

UPMC Mercy Hospital in Pittsburgh, Pennsylvania. The following day, June 5, 2017, he indicated that he wished to go home. However, his wife consulted with hospital staff and ultimately applied for a Section 302 involuntary commitment of Appellant, which was approved. Appellant remained at the hospital until June 7, 2017, when a staff member of UPMC Mercy filed a Section 303 application for the extended involuntary commitment of Appellant.

Counsel was appointed to represent Appellant, and a hearing on the Section 303 petition was conducted on June 9, 2017. At the outset of that proceeding, the court acknowledged that Appellant, his wife, his physician, and his counsel were present, and that everyone was "in agreement that they're looking for a bed for [Appellant], a rehab bed for his alcohol problem. He agreed to that." N.T. Hearing, 6/9/17, at 2. Appellant's counsel and the court then had the following exchange:

> [Appellant's Counsel]: I spoke with [Appellant], and he understands that he's only really being held here until they have an inpatient bed. And he's willing to wait here until they have the bed and go and comply with inpatient treatment.
>
> THE COURT: Right. So this will be a stipulation to a 20-day inpatient/outpatient order. The inpatient here at UPMC Mercy and the outpatient -- well, I don't know.
>
> * * *
>
> THE COURT: Mercy Behavioral Health MH/MR. Thank you.

Id. at 2-3. The proceeding then concluded, and a certification extending Appellant's involuntary commitment for twenty days was filed that same day.

Five months later, on November 30, 2017, Appellant filed the Petition underlying the present appeal, in which he asked the court to expunge the records of both his Section 302 and Section 303 commitments. A hearing was conducted on March 8, 2019. There, Appellant's counsel and the respondents, the Pennsylvania State Police (PSP) and counsel for Allegheny County, presented arguments and evidence before the court. Specifically, Appellant contended that his Section 302 commitment was not based on sufficient evidence, and that his wife had only signed the commitment forms because she does not speak English and did not understand the nature of an involuntary commitment. See N.T. Hearing, 3/8/19, at 3-10. In regard to his Section 303 commitment, Appellant averred that his attorney had rendered ineffective representation by erroneously leading him to believe that he was stipulating to inpatient substance abuse treatment, not an involuntary mental health commitment. See id. at 5. Appellant also challenged his Section 303 commitment based on the fact that the June 9, 2017 hearing had occurred 48 hours after the application for an extended commitment was filed, when 50 P.S. § 7303(b) requires that the hearing be held within 24 hours after the application is filed. Id. at 9-10.

In response, the PSP argued that Appellant's petition to expunge his Section 303 commitment was untimely, as Appellant had not petitioned the court of common pleas to review his certification for extended involuntary commitment within 30 days. See 50 P.S. § 7303(g) ("In all cases in which the hearing was conducted by a mental health review officer, a person made

subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification."). Appellant countered that nothing in the record indicated he had been apprised of his right to petition the court of common pleas to challenge the mental health review officer's certification to commit him under Section 303.

At the close of the hearing, the trial court took the matter under advisement. On April 17, 2019, the court issued an order denying Appellant's Petition, reasoning that, inter alia, it was untimely filed. The court explained:

> [Section] []303(g)[] does not explicitly state any time frame within which a petition for review to the court of common pleas must be filed. However, an appeal that is taken from a [Section] []303 certification proceeding which has been conducted before a mental health review officer may be considered to be an appeal from a tribunal or other government unit. As such, the appeal would be subject to the thirty (30) day deadline imposed under 42 Pa.C.S. § 5571[3]. See, e.g., … In re K.L.S., 934 A.2d 1244, 1247-48 (Pa. 2007) [(holding that "[t]he certification of a [mental health review officer] is … a 'final adjudication or determination')]. If that is the controlling deadline, then the November 30, 2017 Petition to Vacate and Expunge was untimely as to the [Section] []303 commitment of June 9, 2017. The validity of a [Section] []303 commitment which is not seasonably appealed cannot be challenged at a later date. See In re: Jacobs, 15 A.3d 509 (Pa. Super. [] 2011). If the Petition to Vacate and Expunge as to the [Section] []303 commitment was time-barred and the record of that commitment remains in place, then an expungement of [Section] []302 commitment is not available.
>
> [3] [Section 5771 states: "]Except as otherwise provided in subsections (a) [relating to appeals to the appellate courts] and (c) [outlining exceptions not applicable herein] and in section 5571.1 […], an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order."[]

Trial Court Opinion (TCO), 7/30/19, at 6-7.

Appellant filed a timely notice of appeal on May 14, 2019. On July 30, 2019, the trial court issued a Pa.R.A.P. 1925(a) opinion. Herein, Appellant states four issues for our review, which we reorder for ease of disposition:

> 1. Did the lower [c]ourt have jurisdiction to hear and determine Appellant's Petition to Expunge Civil Commitment and Restoration of Rights, although Appellant had not filed a Petition for Review under 50 [P.S.] § 7303(g) of his Section []303 Involuntary Commitment?

> 2. Did the lower [c]ourt err when it failed to find that Appellant's rights to due process were violated as a result of ineffective assistance of counsel with relation to the proceeding against Appellant under 50 [P.S.] § 7303 of the [MHPA]?

> 3. As Appellant was subjected to an involuntary mental health commitment under 50 [P.S.] § 7302, and where Appellant was not examined within two (2) hours of entry to the hospital, and where examining physician findings were insufficient, and where deficiencies existed in the 302 warrant, did the lower [c]ourt err as a matter of law in failing to find that Appellant's due process rights were violated?

> 4. Did the lower [c]ourt abuse its discretion when it failed to find that there was an insufficiency of evidence as a matter of law to support Appellant's involuntary mental health commitment pursuant to 50 [P.S.] § 7302?

Appellant's Brief at 4.

Appellant's first issue challenges the trial court's determination that his Petition was untimely, as it was not filed within 30 days of his certification for Section 303 involuntary commitment. In his principal brief, Appellant relies on this Court's decision in In re J.M.Y., 179 A.3d 1140, 1144 (Pa. Super. 2018) (en banc) ("J.M.Y. I"), which was overruled by our Supreme Court during the pendency of Appellant's appeal. See In re J.M.Y., 218 A.3d 404

(Pa. 2019) ("J.M.Y. II"). In J.M.Y. I, we reviewed whether the trial court had properly denied J.M.Y.'s petition to expunge his involuntary commitments under both Sections 302 and 303. J.M.Y. had filed his petition over two years after his commitments, but he alleged various due process violations of his rights under the MHPA, including that he was not present at the Section 303 hearing; he was never informed of the nature of that proceeding, nor did he agree to the stipulation that was entered; and he was not advised of his right to appeal the commitment under Section 303(g). See J.M.Y. II, 218 A.3d at 414. Ultimately, our Court in J.M.Y. I concluded that we had jurisdiction to review and vacate J.M.Y.'s commitment under Section 303. In reaching this decision, the J.M.Y. I panel

> began its analysis with a discussion of In re Ryan, 784 A.2d 803 (Pa. Super. 2001) (concluding that, because an individual who was involuntarily committed under Section 303 did not receive his informal hearing on the commitment petition within 24 hours as required by Section 303(b), nor, after he petitioned the court of common pleas for review of his certification by the mental health review officer under Section 303(g), did he receive a hearing in that court within 72 hours as that provision required, his due process rights were violated, which necessitated vacating the Section 303 commitment order and expunging his treatment records). The majority viewed In re Ryan as establishing the proposition that, whenever the procedures set forth in the MHPA are not followed in a Section 303 commitment proceeding, the involuntarily committed person has been denied due process, and the commitment must be vacated as well as the records thereof destroyed.

> The majority acknowledged the holding of In re Jacobs, cited by the trial court, that, once a person has been committed under Section 303, this forecloses judicial review of the Section 302 commitment; however, it interpreted In re Ryan as establishing an exception to this general principle for situations where the due

process rights of the involuntarily committed individual were violated. Thus, the majority reasoned that, whenever a Section 303 commitment does not furnish adequate due process to the involuntarily committed person, In re Jacobs does not preclude the vacation of that individual's Section 302 commitment and expungement of his or her treatment records.

The [C]ourt then recited the language of Sections 303(c)-(g) of the MHPA, and concluded that, based on its review of the certified record in this matter, "the certification was not proper and, therefore, the Section 303 commitment was not valid." In re J.M.Y., 179 A.3d at 1145. The [C]ourt highlighted the fact that [J.M.Y.] testified that he was unaware that the Section 303 commitment hearing would be held on September 23, 2012, the testimony of his public defender that [J.M.Y.] did not attend the hearing, the testimony of Sergeant Redman that he did not appear at such a hearing, and the notation in the Certification that [J.M.Y.] did not appear at the hearing.

The [C]ourt also noted how, in its view, the Certification did not meet the requirements of Section 303(d) because it did not contain any explanation of [J.M.Y.'s] right to appeal to the court of common pleas under Section 303(g), nor an explanation of his right to continuing representation by counsel in pursuing such an appeal. Also, the majority pointed out that there was no evidence [J.M.Y.] was ever served with the Certification as required by Section 303(e), and it called attention to the statement in the discharge summary that [J.M.Y.] "won" his Section 303 hearing as further evidence the Certification was not valid. Accordingly, because it concluded [J.M.Y.'s] due process rights were violated, "fundamental fairness" required his Section 303 commitment be expunged.

J.M.Y. II, 218 A.3d at 411-12.

J.M.Y. I was filed after Appellant filed his Petition to expunge his Section 302 and Section 303 commitments. However, the trial court found J.M.Y. I distinguishable, concluding that "the case at hand does not present any apparent due process infirmities." TCO at 10. Accordingly, the trial court deemed Appellant's Petition untimely and denied it.

After Appellant filed his present appeal, our Supreme Court overruled J.M.Y. I in J.M.Y. II. The J.M.Y. II Court first observed that there was no statutory basis for J.M.Y.'s petition to expunge his Section 303 commitment. See id. at 415-17 (concluding that neither 18 Pa.C.S. § 6111.1(g)(2), nor 18 Pa.C.S. § 6105(f)(1) of the UFA provide an avenue for challenging the validity of a Section 303 commitment). The Court then explained that,

> [J.M.Y.] seems to be arguing that, because he is raising due process challenges to his Section 303 commitment procedure, such challenges may be brought at any time, and in the manner he chose. We reject such a notion. As the learned Judge Benjamin Cardozo aptly noted: "Jurisdiction exists that rights may be maintained. Rights are not maintained that jurisdiction may exist." Berkovitz v. Arbib & Houlberg, 230 N.Y. 261, 130 N.E. 288, 291 (1921). Merely because [J.M.Y.] presented claims of a constitutional dimension did not confer jurisdiction on a court to adjudicate them. Even constitutional challenges must be brought in a manner specified by law, and in a timely fashion, or else they are waived. See Commonwealth v. Knox, 647 Pa. 597, 190 A.3d 1146, 1152 (2018) (observing that "[c]onstitutional claims are subject to waiver regardless of their importance").
>
> Moreover, Section 303(g) of the MHPA furnished a means for [J.M.Y.] to raise due process challenges to the commitment procedure which led to the entry of the Certification. This section provides:
>
> > (g) Petition to Common Pleas Court.--In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been

- 8 -

> followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(g) (emphasis added). Thus, [J.M.Y.] had the right under this section to petition the court of common pleas for review of his Certification by the mental health review officer, because the Certification directed him to receive 20 days of outpatient treatment, and, thus, [J.M.Y.] was "subject to treatment" under Section 303(g).

Although it is true, as [J.M.Y.] argues, that Section 303(g) does not specify a time within which such a petition for review must be brought, we reject his contention that the time period for filing a petition under this section is essentially boundless. As our Court recognized in In re K.L.S., "[i]n proceedings under the MHPA, the case is ... heard by the [mental health review officer], a law-trained, quasi-judicial officer who prepares a certification of findings 'as to the reasons that extended involuntary treatment is necessary [and] a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing.'" 934 A.2d at 1247-48 (quoting 50 P.S. § 7303(d)) (second alteration original). We further held therein that the certification of the mental health review officer, as a quasi-judicial officer, constitutes a "final adjudication or determination" of a local agency or a Commonwealth agency. Id. at 1248. Consequently, inasmuch as a mental health review officer is considered a local agency or Commonwealth agency, the mental health review officer must be classified as a government unit, see 42 Pa.C.S. § 102 (defining government unit, inter alia, as "any government agency"), and, under Section 5571(b) of the Judicial Code, "an appeal from a tribunal or other government unit to a court ... must be commenced within 30 days after the entry of the order from which the appeal is taken," 42 Pa.C.S. § 5571(b). [J.M.Y.], therefore, had 30 days from the date of the mental health review officer's Certification to petition the court of common pleas for review of any due process or other challenges to the Certification. As he did not do so, but instead filed the instant petition over two years later, neither the court of common pleas nor the Superior Court had jurisdiction to consider the merits of these claims.[22] Accordingly, we must reverse the order of the Superior Court, which itself reversed the common pleas court's order dismissing [J.M.Y.'s] petition.

> [22] The Superior Court's decision in In re Ryan, relied on by the Superior Court majority [in J.M.Y. I], did not purport to alter these procedural limitations for bringing due process challenges to proceedings under the MHPA. In that case, the petitioner, unlike [J.M.Y.], timely filed his petition for review in accordance with the requirements of Section 303(g) of the MHPA. Because the petitioner properly raised and preserved issues of whether the procedures governing Section 303 commitments were followed in his case, there was no question that the Superior Court had jurisdiction to adjudicate his appeal, and to render its ultimate decision that the failure to follow the explicit requirements of Section 303 governing the conduct of involuntary commitment proceedings constituted a due process violation requiring the vacation of a Section 303(b) certification and expungement of related records.

J.M.Y. II, 218 A.3d at 417-18 (some footnotes omitted; emphasis in original).

J.M.Y. II clarifies that under In re K.L.S. and 42 Pa.C.S. § 5571(b), the trial court lacked jurisdiction to rule on Appellant's Petition to expunge his Section 303 commitment, as the Petition was filed more than 30 days after the certification order that involuntarily committed Appellant. Moreover, the due process concerns raised by Appellant cannot overcome the untimeliness of his Petition. However, as the J.M.Y. II Court pointed out, Appellant has the "ability to petition for review of the Certification nunc pro tunc, based on these alleged procedural irregularities." Id. at 419 (citing Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty., 746 A.2d 581, 584 (Pa. 2000) ("[I]n civil cases, an appeal nunc pro tunc is granted only where there was fraud or a breakdown in the court's operations through

- 10 -

a default of its officers.") (internal quotation marks omitted)).[2]  Accordingly, we affirm the court's order, without prejudice to Appellant's right to seek nunc pro tunc relief below.[3]

Order affirmed.

_____

[2] We note that in Appellant's reply brief, he cursorily avers that we should not apply J.M.Y. II retroactively to his case, as it "announced a new principle never before addressed in expungements of involuntary Mental Health Civil Commitment cases...."  Appellant's Reply Brief at 6.  We disagree.  The Court's decision in J.M.Y. II did not announce a new principle, and the Court did not declare that its decision would apply prospectively only.  Rather, J.M.Y. II merely corrected the J.M.Y. I panel's misinterpretation of In re Ryan, and clarified that under K.L.S. and 42 Pa.C.S. § 5571, a certification of involuntarily commitment must be appealed to the court of common pleas within 30 days.  Moreover, "[w]hile retroactive application of a new rule is a matter of judicial discretion usually exercised on a case-by-case basis, the general rule is that the decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of the changes in the law."  Commonwealth v. Hays, 218 A.3d 1260, 1264-65 (Pa. 2019) (emphasis added).  Appellant has not convinced us to deviate from the general rule that we apply J.M.Y. II to his case.

[3] Given this disposition, we are without jurisdiction to review Appellant's second issue challenging the trial court's failure to find that his due process rights under Section 303 were violated.  Moreover, because Appellant's Section 303 commitment has not been vacated or expunged, his third and fourth issues challenging his Section 302 commitment are moot.  See In re Jacobs, 15 A.3d at 511 (concluding that the appellant's Section 302 issues are moot because, "even if [the appellant was] entitled to expunction under [Section] []302, expunction cannot go forward because [the] appellant was also involuntarily committed under [Section] []303").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2020